It will be attorneys who are going to orally argue this case. Please come to the podium and introduce yourselves. For the appellants. Good afternoon, I'm R. Austinson on behalf of the appellants. What's your last name, sir? Zimmer, Z-I-M-M-E-R. Yes, sir. Good afternoon, Your Honor. John Sudeikis on behalf of all three plaintiffs, Mr. Kainrath, Jason Pyle, and Raoul Aguri. Okay. We'll allow both of you 20 minutes. Appellant, from that 20 minutes, reserve your time for rebuttal. Five minutes, please. Whatever comes out. Okay, the appellant may proceed. Thank you. Keep your voices up. The microphones are not for amplification. They're there for recording purposes. And I see we have some people in the back. I know what you have to say. May it please the court, counsel, my name is Austin Zimmer. I represent the appellants in this case. Stickney Township Assessor, Jay Grider, and the Stickney Township. We're here today because the circuit court erred when they denied appellants motion for summary judgment that was based on the Citizens Participation Act. I know this court is well aware of that act and the elements that have to be proven. So I'm going to start with the most important one and the issue that we hear today, and that's the second factor of the Citizens Participation Act. As you know, the court held that the appellants met the first requirement. It did not hold that we met the second requirement. Under the act, to prove that a case should be dismissed under the Citizens Participation Act, the movement must prove the claim is both meritless and retaliatory. The circuit court never got to the issue of retaliation. It found that the claims weren't meritless. Appellants brought essentially two claims. They brought a false light claim and a defamation claim. I'll start with the false light claim because I think that's the most clear one to demonstrate to this court why the circuit court erred. A claim is meritless if a movement can disprove some essential element of the non-movement's claim. For false light, one of the elements is the defendants have to act with actual mouths. That is an element that has to be proven. There's no evidence at all in the record that demonstrated that Jay Greider acted with mouths. And, in fact, the circuit court observed that Greider testified that he did not send any of these letters out out of spite. Instead, what the evidence did demonstrate is that Mr. Greider conducted research and believed he could support the statements he made in the letter. And, therefore, Greider's secretarianship disproved the element of mouths. Do you really think a self-serving statement by a party by itself as to what his intent was is sufficient to eliminate any issue or fact as to whether there was malice? Based on this record, yes, Your Honor, because there was nothing else in the record that the court reviewed to demonstrate any type of malice. But it would be proved circumstantially, right, by the kinds of statements that were made? I mean, isn't it generally a factual question? Not in this situation because of what the record showed. The record didn't demonstrate any malice. It demonstrated the fact that he researched this. He looked into the issues. He believed he was doing this in relation to his scope of his employment. But aren't you basically saying the inferences then would be that there was no malice, which is not what we should do on a motion for summary judgment? The inference would be under this that we've disproven the element of malice. So that's what we're required to do under the Act. Do you have a case in which a, and I don't mean self-serving as pejoratively as it sounds, but a self-serving statement by a party is sufficient to defeat malice on a motion for summary judgment? I don't have a case that says specifically that, Your Honor. The second claim, and this goes to the order that the court had last week in order to speak on this issue of affirmative offenses. The second element of the second claim that the plaintiffs brought is defamation. And the elements of defamation are articulated in the Supreme Court case of Green v. Rogers. And in that case, one of the elements is an unprivileged communication. I know it says that, but it's not right. It's not right. I mean, the restatement makes it clear. The Supreme Court has made it clear. Privilege is an affirmative defense. It just is. And I agree with you, Your Honor. It is an affirmative defense. However, it's also an element of defamation. I really believe that's wrong. And I think Garrido discusses it directly. But the restatement also discusses it directly. That's just an unfortunate terminology that our Supreme Court, to your credit, has repeatedly said, unprivileged, unprivileged, unprivileged. But I think the case law is also pretty clear. So stay with me at least for a moment. That privilege is a defense. Okay. I will stay with you. This is an important point. I want to spend a lot of time on it based on that. So thank you. Me too. Thank you for that. So you look at that footnote in the Garrido case that I'm sure you're aware of. It's footnote two. Right. And that's where they discuss this element that it's not an element. It's just an affirmative defense. And that case Garrido incites to the Quinn case, Quinn v. Jewel. Okay. Incites to that. Now, I think there's a third thing to point out is all these cases that have dealt with defamation with regards to the Citizens Participation Act, they're cases on a motion to dismiss. They're not a motion for someone to judge like this was. But what that case said specifically in the Quinn case, that stated that a plaintiff, for purposes of pleading, does not need to plead facts to demonstrate nonprivilege. It doesn't state that it's not an element of offense. It states clearly that a plaintiff doesn't need to plead facts. And that's not what we're dealing with here. What we're dealing with here is where this claim is meritless because a movement can disprove some essential element of the act. And here, based on the Supreme Court's own holding, that is an essential element of defamation, unprivileged publication. And the Garrido case, when it cites to that case in a footnote, it doesn't change that. And the fact is, as recently as 2015, this case has cited to Green v. Rogers. This court has cited to Green v. Rogers as well. So if I want to... That's the restatement. So are you saying Illinois doesn't follow the restatement? Or what are you saying? Yes, I'm saying Illinois does not specifically follow that restatement. The Supreme Court states otherwise. And that is an essential element. Okay. All right. So let's assume whether it's an affirmative defense or an essential element, why is it an uncontested issue that should have been resolved in your favor on summary judgment? That goes to the issue of absolute privilege. And there's several cases that are very instructive on this point. The one is the Southern Circuit case regarding Dorothy Brown. The Southern Circuit interprets Illinois law. Illinois courts have long held that state and local government officials cannot be civilly liable for statements within the scope of their official duties. High-ranking. High-ranking state and local officials. That's not how I read it. It's executive branch officials of state and local governments. They don't make any distinguishments. What about within the scope? There's facts in the record here that it was not within his scope. You know, and it's an odd... I understand the township assessors in Cook County are... An odd job. That's the issue. That's the one issue we have to demonstrate, that, you know, are his statements, were they reasonably related to his duties as assessor? Isn't that a fact question here? No, because the facts that have been established in the motion for summary judgment demonstrate that they were reasonably related. All right. Here's why. This whole investigation started, it's undisputed. It started when he received a document, when Mr. Griner received a document about a pool permit for unincorporated property. So he gets that, he drives off of the property, and he sees a house that's on there that's still being assessed as vacant land. And that's the first time he heard about that. So based on that, he uses the computer and other research tools in his office to conduct research. As he's conducting this research, he finds things that he believes are incorrect as far as how certain properties in his district are being assessed, as to certain properties that have homeowners exemptions on it that should. It's reasonable for him to look into potential disproportionate tax assessments in his district. It's reasonable for him to address those concerns on behalf of the citizens. That's what most of Mr. Griner's complaints about are interactions with citizens' odds. They're complaining about paying too much of their fair share of property taxes. So everything that he was doing was reasonable for him to look into this. It was reasonable to report to people that he believed were more higher up in county government than him to get some sort of action. It was all reasonably related to the scope of his employment and his duties of assessor. And it's very clear when you look at the case, you look at the Dorothy Brown case. Dorothy Brown sent a letter to the ARDC. The court found that was reasonably related to the scope of her employment. She sent out a press release about her issues that she was having with the lawyer. The court found that was reasonably related. If you look at the Blair case, there was a Supreme Court statement when the governor issued a press release about real estate brokers. Again, the court found that was reasonably related. So it's very broad, and the reason why we do this is because the courts want elected officials to have absolute immunity for defamation lawsuits, to be found liable for defamation within the scope of their job, and to be immune from these suits that can take up a lot of elected officials' time to defend them. So that is why when you examine a case that deals with absolute privilege, it's very strong. It's extremely strong. And essentially, as long as there's some sort of reasonable relationship to the statements that you make to your position, they're protected. If Mr. Biden were to call the plaintiffs in this case murderers or something completely unrelated to property taxes, then yes, that's not reasonably related, and that's not absolute privilege. But all his comments were related to the scope of his work as an assessor. So when you examine that and you examine the cases that deal with absolute privilege, it's clear that the defamation claim is murderous because we can disprove some element of the claim. And I understand, Judge McCook, you may not be convinced as to whether it's an essential element. So I have an alternative argument to propose to the court. I'm also not convinced it's an absolute privilege, but that's okay. So my alternative argument is this case is different than the Ryan. It's different than the Ryan-Gorino case for several reasons. First, that deals with a motion to dismiss. And what difference does that make? At a motion to dismiss stage, you're just looking at the pleas. It's a 2-6-19, so you can go outside the pleadings. Maybe there was an affidavit about going outside the pleadings, but there's not the full scope of discovery. Is there a full scope of discovery here? I thought under the SLAP Act, you generally don't get a full scope. Was there a full scope of discovery here? Yes, this case, the complete end of discovery was done, and literally we were waiting to have trial when you guys graciously accepted my PLA. So we looked at distance on this case. In the Gorino case, the motion was just a motion to dismiss, just attacking the pleas. Here, this is a summary judgment case. The case has gone the distance. There's been discovery on this. They've been able to test our theory of defense, take whatever depositions they want. Moreover, in the Gorino case, that did not deal with an elected official. This case deals with an elected official, as I've mentioned, and the protection that he has under absolute immunity. Absolute privilege? Yes, absolute privilege. Where it can be difficult to really assess an affirmative defense and the issue of meritless at the pleading stage, here it's different. And this is the first case that I've seen where the issue of meritless has been addressed at the conclusion of discovery at the summary judgment stage and not the motion to dismiss stage. So I think at this point, if the court is convinced that there's absolute privilege and we've gone through the end of discovery, we've had a summary judgment motion, that the court should be able to consider the issue of meritless now because the plaintiffs have a full opportunity to test that theory. So I think it's very different than the Gorino case. So even if this court finds that unprivileged publication is not an essential element, that's an alternative argument that we think our case is distinct from Gorino and you can look at affirmative defenses and you should look at affirmative defenses at a summary judgment stage after discovery has been done. Gorino, and I'll defer to you on how to pronounce it because I have no idea, but Corrado does say that privilege is an affirmative defense, right? It does. Okay. There's no doubt about it and my number one, you know, argument and my position is based on the Supreme Court case that that is an element of the offense. So you're saying it's wrong in that aspect of Gorino you disagree with? Yes, I disagree with that. When Gorino gets into that, when they say it's not an element of offense, it's just in the footnote, it's not in the body of the case, and to support that they go to the Quinn case and that's not what the Quinn case says. The Quinn case does not say that it's not an element of offense. Let me ask you a different question and then let you finish up, but do you agree with the holding in Gorino that there should be a distinction between the elements and an affirmative defense? The situation that occurs to me is the simplest is what if a statement is made that is far outside the statute of limitations? So there clearly can't be any recovery on that statement. Why shouldn't somebody be able to get rid of that lawsuit on a slap, on an anti-slap act? Motion. Do you understand what I'm saying? Yeah. Do you accept the premise of Gorino that we should distinguish between a plaintiff who can't meet the elements and a plaintiff whose claim is completely subject to dismissal under an affirmative defense? Yeah, I understand and I do accept that premise. And my argument is our case is different. It's because unprivileged publication is an element. And that's why I think this case is different. The court erred when it did not find in our favor regarding the meritless. And because of that, it never went out to the second prong under Factor 2 under the Citizens Participation Act. And that's the issue of recalliation. I think when you look at the facts of this case, the lawsuit was filed the same month as Mr. Grider's letters were sent. And the Gorino case that we cite, it was four months in time. But clearly the main fact that demonstrates this case was clearly retaliatory filing is the grossly disproportionate amount of money the plaintiffs are seeking. The plaintiffs are seeking $24 million for my clients, $12 million in compensatory damages, $12 million in punitive damages. When you look at that, I think the court did not examine that. But if this court finds that the claim is meritless, I think the evidence was very clear in what was presented in our motions for summary judgment that it was retaliatory. Isn't that another fact question, though? Don't you have to employ inferences? I mean, I don't know. We're at $12 million. Punitives are punitives. But where is the compensatory damages? We're at $12 million. I don't know from the record we have. Exactly. I mean, $12 million, as everyone knows, I mean, that's a substantial settlement verdict. And there's nothing on record to support such amounts of damages in a defamation case. Has everything been stayed while this appeal is pending? Is that what's happening below? Yes. Okay. Yes, unfortunately, we did make an argument on the issue of absolute privilege. We weren't granted leave to appeal that. So that issue is out there with the tri-state as well. I'm sorry, I don't understand it. Because I know they raised that in the jurisdictional. But what are you saying? After this motion was denied, you filed another motion for summary judgment based on absolute privilege. Correct. And that's why I'm not here making an argument just on absolute privilege. I'm not able to. I'm just making it in the context to demonstrate why element two, unprivileged publication, is not met. So is that motion ruled on the law before the stay? Your motion for summary judgment based on absolute privilege was denied? Correct. Okay. And then the matter was stayed. Correct. Okay. Lastly, because the court did not hear the third fact on the Citizens Participation Act, they did not examine whether there was Grider's actions were not aimed at procuring favorable government action. Because this court is well aware that if the first two factors are met, then the burden then shifts to the plaintiff to demonstrate clear and convincing evidence that his actions were not aimed at some sort of favorable government action. So it's our position that because the court did not find that the claims were matterless, it erred by not examining that third factor. So would you say if we ruled in your favor, we'd have to remand for that determination? Is that what you're saying? Or are you saying we can make it on the record? I think you could examine on the record because the record is lacking when it shows any sort of clear and convincing evidence. So I think ultimately what we're asking for in this case is we're asking for the court to overturn the denial of our summary judgment, agree with the circuit court that the first element was met, and find that the lawsuit claims were meritless and retaliatory, and that there was no evidence in the record, let alone clear and convincing evidence, to demonstrate that Mr. Grider's actions were not aimed at procuring favorable government action. And with that, I'll reserve the rest of my time for rebuttal. Yeah, fine. You'll have five minutes for rebuttal, counsel. Thank you very much, Mr. Zimmer. Appellate? Please, the court, Justice Harris, Justice Mikula, Justice Griffin. Justice Mikula, we don't even have to get to the issue of privilege because we're here simply based on a SLAPP appeal, and the only order before the court for a SLAPP appeal is the SLAPP order, and that would have been the August 18, 2017 order. Now, if you go to their brief, where that order was decided, if the motion for summary judgment in the trial court, you can go through this whole motion for summary judgment based on SLAPP, and you won't find the word privilege here. There is no privilege issue that was ever raised at the trial court level from the order from which he is appealing. He raised it twice before. He raised the issue of privilege twice before in the trial court. He lost on both of them, and he didn't appeal. This is what he calls initial motion, which is before the court was the third one, and in this one, there's no issue of privilege that was ever raised here. So you're saying he's waived it for purposes of this appeal? He has, and the problem that he has then is he runs into a collateral order doctrine. Because he argued truth below, right? Right. And then he's argued privilege on appeal. Correct. And he hasn't argued truth on appeal, I don't think. Right. And he can't, because this was his other motion for summary judgment that he filed about a month later, and this is the order that raises the privilege and immunities in it. And this order, this was the November order. This was the September 14, 2017 order. This is the only brief that he filed down there where he raised the issue of privilege. I understand. And you did complain about our jurisdiction. Right. But I don't recall you arguing waiver. Jurisdiction can always be raised. It can be raised through a response saying there's no issue of waiver when it comes to jurisdiction. The court, of course, itself, if it finds it, may not have jurisdiction. It has to inquire about that itself. But I think we have jurisdiction. We granted an interlocutory appeal on the denial of the SLAPP Act motion. Right. So you're not really arguing jurisdiction. You're arguing that he's waived the argument he's trying now to make here. That's true. And I'm looking at the scope of review. The scope of review is simply that order and that motion and that's it.  But I'm looking at your brief and I see your brief saying Greider is not entitled to absolute immunity. Greider is not entitled to absolute or qualified privilege. I don't see anywhere where you said waiver of this argument. I did say in the beginning of the brief, after I addressed the issue of jurisdiction, I said in the alternative, if the court finds it has jurisdiction over this issue, then the penalty is stated as follows. Yes. I'm saying you may have waived waiver because you haven't said that he waived anything. You can't waive waiver when it comes to a jurisdictional issue. It's not jurisdictional. It's not jurisdictional. What you're saying is he can't make this argument, Your Honors, because he didn't make this argument to the trial court, which is a good argument, except I think he might have waived it because you didn't argue it in your brief. If you want to address that, that's fine. If you want to go ahead and address the merits of it, that's fine, too. No, I won't address that issue, Your Honor, because then what Your Honor would have to do is you would have to go back then and overturn Judge Gillespie's order that's not before you on appeal because he denied that motion for summary judgment. And, Ms. ---- I'm not ñ that appeal is not before us. Right. I agree with you 100 percent. The only appeal that is before us is the order that denied the SLAPP Act summary judgment motion. And the issue of SLAPP has nothing to do with privilege, even if I didn't waive it. You can have all the privileges in the world. Sandholm has said, you look at the plaintiff's complaint and that's it. The issue of the defendant or privileges he has is irrelevant. You have to show the plaintiff's complaint is meritless and retaliatory. That's also the jurisdictional nexus here. So he doesn't get to say any defense he wants on appeal. His only appeal is, is it meritless and retaliatory, and that's it. And if he can't show that, then he's out of luck. Okay. And I suggest to you, the possibility at least, that the claim could be found to be meritless because everything that is said is in the scope of an absolute privilege. That could be a meritless claim. I don't agree with you. I think you said in Counsel v. Eichhorn, the basics of frivolous is you analyze the legal rival to Rule 137, and you said it's basically frivolousness. If I have a claim which is fashionably okay, legally okay, but is defeated by a formative defense, that is not fashionably baseless or legally baseless as well because he can always waive that defense, can't he? He can't. Sure. Right. So it's not. And in fact, over in the bankruptcy court, people can even file claims beyond the statute of limitations over there because somebody may not raise that defense and then they waive it as well. And then the other issue, Your Honor, is if you agree with him that you should reach meritless, you have the Cook County assessor who did his own investigation in this matter, and his conclusion was, and I think it's quartered in the Bruce Grider's claims, was found to be without merit. So, Your Honor. That reminds me of an important question, and then I'll let you go. But you cite in your brief, citations to the record are to previously file plaintiff's supplemental record. That's, and then everything that you say about what he says in his deposition, it's all to the supplemental record that I don't think we have. It was attached to the answer to the petition for leave to appeal, which is part of it. Oh, okay. Right. Okay. That's where the supplemental record is? Correct. It's all in your response to his petition for leave to appeal? Correct, Your Honor. And in that supplemental record, it says, Mr. Grider's two-page essay are without merit. So, you're going to have to now disagree with the Cook County assessor, Grider's boss, basically, and say, no, we disagree with this investigation somehow. We found merit in this opinion. And I don't believe that Your Honors can do that, certainly not based on this record. Justice Griffin and Justice McGill, you all said asking about whether or not we could show anything in the record which would lay out Mr. Grider's motive. And, of course, to come before people and say, look, I didn't mean to hurt the person. I had honest motives, isn't going to suffice. But if you look at the record before you, and it's Mr. Grider's own deposition, he's asking his own deposition, have you sent out any other letters or any other investigations that you might have done? Now, you would think that if he's saying this is within the scope of my duties and he's been a township assessor for, I don't know, I think over a decade, have he done any investigations? He says no. He says, what authority do you have to do these investigations? He says, I don't know. And then I ask him, do you still feel it's your obligation to investigate? And he says no. He's informed by the Cook County's Chief of Staff, Mr. Giacometti, that I have no investigative powers. So, and then the other thing, which goes to his motive, Justice McGrath, is if I have pure motives, I don't need to send things out anonymously. Mr. Grider, in his deposition, says, I asked him, have you sent out other anonymous letters? He admits he sent out three anonymous letters. I asked him, why did you send them out anonymously? Because if these are within the scope of your duties, why are you hiding? He answers, I don't have an answer right now. I mean, if that doesn't show a guilty intent after attacking somebody, why are you hiding if this is something official? Okay. Well, not to, like, take away from this trial that you might have one day. I think what you're really saying, as Justice Griffin said, is that if we get to the privilege, if we get past waiver, we get past all these other problems, there are issues of fact that underlie these alleged privileges. Is that basically what you're saying? Yes, Your Honor. And the facts, unfortunately, for the appellant, got worse as summary judgment went forward. Because at that point, the Cook County Assessor's Office had come out with an investigation and report and said that Mr. Grider's essay had no merit. Mr. Grider's deposition had been taken where he can't account for why he's never done an investigation before and he can't point to any authority for why he's done an investigation before. So it just got worse for him, Your Honor. And the appeal itself, if you look at his summary judgment motion, Your Honor, this is the third time he brought a slapback dismissal. He says it's based on summary judgment. Look at the summary judgment motion that he's appealed here. He actually even attaches the affidavit from one of his first two motions to dismiss. That's what his summary judgment motion was. It was basically, here's my affidavit for my prior dismissal and the record that was before you then. And, of course, once he got a denial on the slap, which, of course, gives you jurisdiction, they decide, well, really what we want is this immunity issue now to come up because we didn't raise it before. And that's why he's asking, Your Honor, us to address it now. That's a real privilege, Your Honor. We live in a country where even the highest ranking officials, we think, are held accountable for their actions, especially for wrongdoing. And we pride ourselves on that. And to let somebody do an intentional court like this and say, I'm absolutely privileged from doing it, you better not only be high up, they better be well within the scope of your obligations. And where in this record has he shown us within the scope of his obligations? We give the governor absolute immunity because he does things every day that upset people. He injures people, like it or not. He's high up. And everybody would be suing him. Oh, you didn't pass this. You vetoed that. We give him absolute immunity to protect not the governor but their job, their specific role that he has because we know he's going to get sued all the time if we don't. When has a township assessor ever got sued? I could never find a case where a township assessor's been sued. This one. Yeah, this is the only one. And so he doesn't need absolute immunity. But if he doesn't need absolute immunity for something like this, what do you say? I need to go out and defame people? I need to call them a tax-cheating posse in order for me to do my job? No, you don't need to call people tax cheats to do your job. And, Your Honor, if we give somebody like this absolute immunity, I assure you the courthouse would be overflowed with people coming in saying, well, I'm entitled to absolute immunity, too. You go to the post office or the DMV and you complain about the line over there to someone, and they say, well, they're going to look in your driving record and publicize that you're driving drunk or somebody to everybody. Well, I'm absolutely immune from line over there. They might say, it's within the scope of my duties. I work for the DMV. What can I do? Every IRS official could come in and say, well, you know, I work for the IRS. Yeah, you want to say that's my duties? Okay, I'm investigating them. I'm going to call them a tax cheat. We cannot even expand that well below the highest officials in this state because what he's done here is an intentional tort. He knew what he was doing was wrong. This was the only investigation that he did. And why you would send this letter out calling these people tax cheats to the press, to the television stations, what was the need to even do that? Even if you say this person had a conditional privilege, he waived it because there was no reason that he would ever need to go to these people. He could have gone if he really thought that he had a concern here to the philosophical discussion of the Secretary of State and everything else. What about the $12 million? I mean, the SLAPP Act is to avoid people trying to shut people up. And is filing a lawsuit for $12 million compensatory damages not potentially intimidating? Isn't that a fact that should go into the mix? What was the basis for $12 million compensatory damages? Your Honor, I agree with you in the sense that defamation in terms of damages is very hard to prove. If I spit in somebody's face and vote it out, they can say, well, sue me. You got my damages? Sue me. It's one of those torts that is very difficult to establish. These are people whose livelihoods were at stake. This is somebody who's an alderman. This is somebody who's high up in the Cook County Assessor's Office. This is somebody who works for the mayor as a building inspector. These are people whose livelihoods are at stake. And to call them a tax-cheating posse and try to get that out there to the press, you may say $12 million is too high, but jury may say that's not enough because we need to deter these kind of people. I don't think the word retaliatory simply means I did something and you filed a lawsuit against me because then everything is retaliatory. Right? Every lawsuit is retaliatory because you're suing somebody because they did something to you. And I think you need to look at the basis for his acts and what he did. What he did here was hopefully get these people fired and get them shamed and get them out of politics so they wouldn't bother him anymore. And look at the scope of what he did. He just didn't go to his neighbors and say, I think your neighbor is cheating on his taxes. I've got compensatory damages and compensated people for their damages. And, you know, the actions, then you get into punitive. I'm not talking about punitive. Maybe $12 million isn't enough. But $12 million in compensatory damages, I'm just not understanding the basis. People call somebody, let's say, a pedophile. Say it to your neighbor, that may be one thing. You send it to the press and they put it out there, that's another. This is something where this person tried to call these people tax cheats. And that's a crime, Your Honor. These are government officials. Not only are they calling them tax cheats, you said you used your government office to help these people with favors. And that's a crime, too. It's a felony. Can you imagine, Your Honor? God forbid somebody said that and put that out to the press? That you're using your office to give somebody favors? I paid you for a decision. I think we would all be outraged at something like that. He's looking to harm these people for the rest of his life is what he's looking to do. And there was really no limits to where he wanted to end it. So you say there's an issue of fact as to whether it's retaliatory as well. It is, Your Honor. I mean, you can't decide things like that on a summary judgment motion as well. I mean, these are factual issues. And retaliatory to me, you can look at the damages and say it's retaliatory. Certainly they had a reason to file a lawsuit. And certainly they had a reason to file a complaint. What are people saying? If somebody's defaming you, you want to say, no, we're not going to keep doing that. I'm not going to put up for it. You don't wait for the second time or the third time and say, no, I don't even stop at the third time, but now I'm in jail, so I'm in the fourth time. Just going back for a second to Garrido, whether that's pronounced right or not. Do you accept the premise in Garrido that a privilege is an affirmative defense? I not only accept that, Your Honor, but it's the Restatement's view and just about everybody else's view. Now, if that's not an affirmative defense, then why is immunity an affirmative defense? Okay. Do you accept the premise in Garrido that we should draw a distinction between affirmative defenses and elements of a claim for purposes of the Slap Act? You have to. Why? Because somebody just looks at the plaintiff's actions. It doesn't just look at a complaint. You can look at things outside the complaint. You can look at statute of limitations. I guess your point you made is affirmative defenses can be waived, so that is one difference. But other than that, why should we draw a distinction? Because the Sandholm case seems to draw that distinction. It's solely based on your actions, you know, were meritorious and retaliatory. And Sandholm seems to say that you only look at the plaintiff's actions. And if he has a claim for damages there, no matter what defenses there are, if you have a real claim for real damages, by law it cannot be meritorious and retaliatory. It may be a loser, but it's not meritorious and retaliatory. So that's what Sandholm seems to say. So you read Garrido as following directly from Sandholm? I do, Your Honor. Okay. And, you know, since something just has an affirmative defense, great, you have an affirmative defense. Meritorious and retaliatory is way higher than that. I don't know, but then what is a slapback? We already have, if it's frivolous, you can get sanctions. You don't need the slapback. So the slapback has to encompass something beyond completely frivolous claims. I agree. The meritorious kind of goes to the frivolousness. The retaliatory kind of goes to it as well. But, you know, even when you look at things like sanctions motion, you're basically looking at the plaintiff's side of it. What did you file, right? You really don't look at defenses. It doesn't come into play at that point. Your Honor, if you don't grant relief to Mr. Grider, what's the worst that's going to happen here? He goes to trial. Like everybody else, he has an opportunity. Let him get in front of his peers of 12 people and show them that it's meritorious and retaliatory. He was unable to do it three times to Judge Gillespie. Maybe he'll have better luck in front of 12 people. I mean, what principle are we saying that you are so special, Mr. Grider, that we're going to give you this absolute privilege that you don't even have to stand in front of a jury and explain yourself as to why he's unmeritorious and retaliatory and bring out all your evidence? He should be treated just like we are, right? He should be happy he's going in front of a jury. He should say, look, here's all my evidence that's meritorious and retaliatory. He can bring that motion at the end of trial and maybe the jury will agree with him. Maybe they'll offer us nothing in the end. All we're asking for is give us a chance. And treat him the same way we treat everybody else. Go in front of a jury like everybody else and let them decide these disputed issues of fact. If you win, you win. That's fine. But guess what? We're not going to have a mini-trial in the appellate court because that's not what it's for. Thank you, Your Honor. Thank you, counsel. Mr. Zimmer, you have the last five minutes. Thank you, Your Honor. Illinois law dictates that we cannot treat Mr. Kreider just like anybody else. And the reason that is the case is because of absolute privilege. And whether Mr. Zdeikas likes the law or not, the law is that elected officials in Illinois have an absolute privilege when making statements that are reasonably related to the official job responsibility. And the Geith case held that that immunity extends to mayors of their municipalities, chief administrators, and officials of the executive branch of local government, which clearly the Stickney Township assessor is. Based on the Supreme Court case, and if this court looks to its own ruling, Capitals v. BGA in 2015, and that case as well, it was held that unprivileged publication was one of the elements of defamation. And if that is the case, this claim is meritorious because Greider's communications were privileged. Now, counsel mentioned the Cook County assessor's review, and they looked at something and they found that Greider's claims were frivolous. It doesn't matter what the Cook County assessor's office thinks. What matters is the elements of defamation. And that's what this court needs to look at. And if this court finds that unprivileged publication is an essential element of defamation, if that is the case, they cannot meet their burden. We have disproved that element. Can you respond to his suggestion that you've waived this whole privilege argument because you never made it to the trial court on this motion? Sure. It's incorrect, Judge. If you look through our motion for summary judgment, we make the argument that this case is meritless because we have an absolute privilege. It's one of the arguments that we've been making since day one, that one of the reasons it's meritless is because of absolute privilege. The words absolute privilege are in our summary judgment motion on this issue. And also, Judge, it was never raised, as you pointed out, it was never raised in his brief that we waived the issue. But if you review the summary judgment record, that's in the summary judgment motion. You argue about truth and absolute privilege. Right. That's been out there all along. Did we focus our motion, and that's summary judgment motion below, as we all now know. But did we mention it? Yes, we did. And we mentioned it in the brief to this court when they accepted our petition for leave to appeal, and he never made an argument in his response that we waived the issue. So there's been no argument of waiver. We've been banging his drum since day one. We have absolute privilege. So just lastly, I think, you know, this court may have some disagreements with whether unprivileged provocation is an element of defamation. But the Supreme Court's definition of it in the most recent case we found and a definition this court adopted as recently as 2015 says it's an element of the offense. And if it's an element of offense, we have certainly disproved an essential element of the plaintiff's claim based on the existing case law that's articulated regarding Illinois and the issue of absolute privilege for elected officials. So accordingly, on behalf of Mr. Dryda and the Stickney Township, we'd ask that you overturn the lower court's decision. Thank you very much. Thank you, counsel. To both counsels, both your presentations were superb. They're going to be very helpful for this court's determination of the issues involved. You can both leave this courtroom knowing you well served your clients. The court is adjourned. We'll take the mat on your ties.